PONDER, Judge.
Lumbermen’s Mutual Casualty Company appealed from the judgment assessing them with damages resulting from an intersec-tional collision.
The issues are the amount of judgment against Lumbermen’s Mutual Casualty Company and quantum in general.
We amend and affirm.
Jessie Sinclair, his wife, Cathy, and their two children were guest passengers in an automobile that collided with one driven by defendant Alton A. Verdin, when the latter failed to stop at a red traffic signal. Mr. Verdin’s liability insurance was exhausted in a concursus proceeding extraneous to this suit. Recovery is sought against Lumbermen’s Mutual Casualty Company, the uninsured motorist insurer of the car in which plaintiffs were guests.
After trial, the court gave judgment against Lumbermen’s and Verdin, in solido, as follows:
Jessie Sinclair $16,500.00
Cathy Sinclair 25,000.00
Donna Sinclair 300.00
Robin Sinclair 500.00
Medical Expenses 4,250.21
Appellant first contends that we should remand the case for a determination of the amount of policy not yet expended and that judgment against it should not exceed that amount. Appellant makes the uncorroborated suggestion that the judgment exceeds the coverage remaining. It was stipulated that the policy limits were $25,000.00 for each person and $50,000.00 for each accident, but there is no evidence of amounts already expended. It may be that the action we are taking remedies appellant’s complaints, but in any event we refuse to remand under these circumstances.
Appellant then contends that the trial judge abused his discretion in making the awards. After a thorough examination of the evidence, we agree that the amounts awarded for Jessie and Cathy Sinclair are excessive.
Jessie Sinclair was first seen by Dr. Annie Plauche on the day of the accident, April 18, 1976, with complaints of pain and stiffness in the neck and right scapula area. He had abrasions and contusion of both legs, of the “seat belt” type. He had pains in the right groin and along the left sterno-cleidomastoid. X-rays of the cervical spine, the right shoulder, the pelvis and the right hip were all normal. Dr. Plauche never saw him again. However, on April 27, Dr. Bruce Guidry in the same office saw him and diagnosed a mild cervical strain. Limited motion was the only gross finding. X— rays were within normal limits. Although told to come back in one week, he never returned.
Dr. Raeburn C. Llewellyn, a neurological surgeon, saw plaintiff on May 2 and at plaintiff’s request admitted him that day to the same hospital in which Cathy Sinclair was being treated. His complaints were of head, neck, shoulder and low back pains. The objective symptoms were spasm of cervical muscle, tenderness to palpation, slight restriction of neck muscles and soreness of paraspinous muscles. The diagnosis was multiple ligament and joint sprains. He *419 prescribed semi-bedrest, physical therapy, muscle relaxants, analgesics, heat massage and traction. He discharged plaintiff on May 12 without restriction or suggestion of further treatment. The mild mid-back and low back muscle strain would require a maximum of two or three months for complete recovery and early return to work would facilitate full recovery. Plaintiff returned on June 23. He told the doctor that he had returned to work but still had some head and neck soreness and low back pain after sustained exertion. There were no objective symptoms. Full recovery by the end of summer was predicted.
Dr. Roy Crochet, a chiropractor, saw plaintiff on February 5 and 6, 1977 with lower back and upper cervical problems. Dr. Edgar P. Landry treated plaintiff for muscle strain on the right side of the neck once on February 7, 1977. He obtained no history.
Plaintiff admitted he called Dr. Llewellyn and asked to be admitted to the hospital. He stated that he returned to work on June 1, 1976. He lied to Dr. Llewellyn so as to get a release; the doctor asked him to stay longer. He passed a pre — employment physical after the accident. Even though he still has low back pains he has been too busy at work to go to a doctor.
We believe that a maximum of $5,000.00 is justified under these circumstances.
Mrs. Cathy Sinclair was seen at the emergency room on April 18 and once more in the office of Dr. Plauche on April 20. A laceration of the scalp was sutured. X— rays of the cervical spine and skull were normal.
Dr. Bruce E. Guidry in the same office with Dr. Plauche saw Mrs. Sinclair on April 23 when he rechecked the laceration. She was told to return in one week. She came back on April 27 for sinusitis, but never came back for the cervical strain.
Dr. Llewellyn saw Mrs. Sinclair on April 28, with complaints of head, neck and spine area pains. He observed spasm of neck muscles, limitation spine movements in the mid and low back areas, and the sutured scalp laceration. There were no neurological findings of spinal cord, major nerve plexus or peripheral nerve injuries. He diagnosed moderate sprain of neck and mild mid and low back. Mrs. Sinclair had a marked anxiety reaction. She was admitted to the hospital on April 28 and treated with bed rest and physical therapy to neck and low back. When she was discharged on May 15, he prescribed some bed rest with gradual increase of exertion. She was to come back in 8 weeks. He expected full recovery in 3 to 4 months. She returned on June 28. He found marked recovery but she was still having headaches after sustained exertion. He discharged her with advice to continue home efforts. He never saw her again. Vaginal or rectal bleeding would be unrelated to the accident. She gave no sign of radiculopathy.
Dr. Roy Crochet, chiropractor, saw Mrs. Sinclair on January 30, 1977. She complained of migraine headaches. He found a cervical syndrome.
Dr. Richard A. Coulon, Jr., a neurosurgeon, saw Mrs. Sinclair once on November 28, 1977. She gave a history of left pectoral and left upper extremity pain for 12 to 13 months. There was generally tenderness but no evidence of neurological deficit. He found a chronically irritated nerve root and early degeneration of disc space. Her radi-culopathy, if related to the accident, should have manifested itself during the treatment by Dr. Llewellyn. He was therefore doubtful of any connection.
Mrs. Sinclair testified that part of her head was shaved and that she wore a kerchief until November. She first had pain in her chest in October, 1977. Dr. Llewellyn told her that two to three years of complete bed rest would be required for recovery.
In view of her failure to show any relationship between the accident and her radi-culopathy and her obvious exaggerations, we believe that a maximum award to her of $10,000.00 is justified.
The children received multiple bruises and abrasions. Robin also received a contusion to her head when she was thrown *420 forward. We do not believe the awards for their injuries were excessive.
For these reasons, the judgment is amended so as to decrease the award to Jessie Sinclair to $5,000.00 and the award to Cathy Sinclair to $10,000.00. As thus amended, the judgment is affirmed. Costs are assessed one half to the appellant and one half to the appellees.
AMENDED AND AFFIRMED.
CHIASSON, J., concurs in part and dissents in part for reasons assigned.
LOTTINGER, J., concurs in part and dissents in part for the reasons assigned by CHIASSON, J.